**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COLLEEN FERGUSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 20-cv-03574-LKG |
| v. ) | |
| ) | Dated: December 1, 2021 |
| TOWN OF RIVERDALE PARK, ) | |
| MARYLAND, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Plaintiff, Colleen Ferguson, brought this employment discrimination action against the Town of Riverdale Park, Maryland ("Town"), alleging discrimination upon the basis of sex and age, discrimination in compensation, and retaliation, pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"); the Lilly Ledbetter Fair Pay Act of 2009 ("Lilly Ledbetter Act"), Pub. L. 111-2; the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-606(a) ("MFEPA"); and the Prince George's County Code. *See generally* Am. Compl., ECF No. 10. Defendant has moved to partially dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court **GRANTS** defendant's partial motion to dismiss.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

**A.    Factual Background**

Plaintiff, Colleen Ferguson, alleges in this employment discrimination action that the Town of Riverdale Park, Maryland has discriminated and retaliated against her upon the basis of

---

[1] The facts recited herein are derived from the amended complaint and are accepted as true for the purposes of resolving the pending partial motion to dismiss.

sex and age, and engaged in discriminatory compensation practices, in connection with her employment with the Town's police department.  *Id.* at ¶¶ 45-128.  Specifically, plaintiff asserts nine counts of employment discrimination and retaliation in the amended complaint, namely:  (1) disparate treatment upon the basis of sex under Title VII; (2) unlawful retaliation under Title VII; (3) unlawful age-based discrimination under the ADEA; (4) unlawful retaliation under the ADEA; (5) sex discrimination under Section 20-606(a) of the MFEPA; (6) unlawful age-based discrimination under Section 20-606(a) of the MFEPA; (7) unlawful retaliation under Section 20-606(f) of the MFEPA; (8) sex and age-based discrimination under Section 2-222 of the Prince George's County Code; and (9) unlawful retaliation under Section 2-222 of the Prince George's County Code.  *Id.*  As relief, plaintiff seeks, among other things, compensatory and punitive damages.  *Id.* at Prayer for Relief.

Plaintiff's Employment History

As background, plaintiff is a female over the age of 50 residing in Pennsylvania.  *Id.* at ¶¶ 10, 13.  The Town employed plaintiff in various roles within its police department from 1999 to 2019.  *Id.* at ¶¶ 10-12.

In 2015, plaintiff was promoted to the role of code enforcement community services manager with the Town's police department.  *Id.* at ¶ 15.  Plaintiff alleges that her supervisor at the time, John Lestitian, avoided interacting with her on matters related to code enforcement because of her age and sex.  *Id.* at ¶¶ 17-19.  In this regard, plaintiff alleges that she complained about Mr. Lestitian's "gender based" treatment to the Town's human resources department in February 2017, and that she complained to two of her supervisors about Mr. Lestitian's "gender and/or age-based treatment" in March 2017.  *Id.* at ¶¶ 22-24.  But, plaintiff maintains that the Town failed to investigate or to address Mr. Lestitian's conduct.  *Id.* at ¶¶ 21-24.

Plaintiff's Demotion And Termination

Plaintiff alleges that the Town discriminated and retaliated against her by giving her a negative performance evaluation in March 2017.  *Id.* at ¶¶ 25-27.  Plaintiff also alleges that the Town discriminated and retaliated against her by demoting her in 2017.  *Id.* at ¶¶ 29-31.  Specifically, plaintiff alleges that, in March 2017, the Town informed her that she could choose one of three employment options regarding her future job title, duties and pay:  (1) stay at her current salary scale, but be demoted in title and responsibilities and continue to report to Mr.

2

Lestitian; (2) take a pay cut of approximately $4,000 per year and be demoted to the position of special projects associate; or (3) apply for the position of development services director. *Id.* at ¶ 30. And so, plaintiff maintains that she was forced to accept a demotion to the position of special projects associate for the Town's police department in December 2017. *Id.* at ¶¶ 31, 36.

Plaintiff further alleges that, after her demotion, the position of code enforcement community services manager was renamed to the "office of development services director," and that this job was given to a male employee who is 20 years her junior. *Id.* at ¶ 32. Plaintiff maintains that she received less pay after her demotion to the position of special projects associate. *Id.* at ¶ 33. And so, in late 2017 and early 2018, plaintiff complained about "the discriminatory treatment [that she was] experiencing" to two Town city council members. *Id*. at ¶ 38.

On March 28, 2019, plaintiff was informed that her employment with the Town would be terminated. *Id*. at ¶ 40. Plaintiff alleges that she again complained to the Town's city council about her treatment and the termination of her employment, and that her complaint was not investigated. *Id*. at ¶ 42.

After being notified of her termination, plaintiff unsuccessfully applied for the position of telecommunicator/dispatcher for the Town. *Id.* at ¶¶ 41, 43. Plaintiff alleges that the Town selected a less-qualified, younger male candidate for this position on March 28, 2019. *Id.* at ¶¶ 43-44.

Plaintiff's employment with the Town was terminated on April 7, 2019. *Id.* at ¶ 44.

Plaintiff's Charge Of Discrimination

On September 25, 2019, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Prince George's County Human Relations Commission. *See* Am. Compl. Ex A. The charge of discrimination alleges that: (1) Mr. Lestitian exhibited condescending behavior toward plaintiff, because he "did not wish to work with a female;" (2) plaintiff complained about Mr. Lestitian's conduct to the Town's human resources department and various supervisors in February 2017; (3) plaintiff received a negative performance evaluation in 2017; (4) plaintiff accepted a demotion to special projects associate in 2017; (5) plaintiff was replaced in her role as code enforcement community services manager by a younger male and received a salary deduction upon her replacement; and (6)

plaintiff received notice of her termination on March 28, 2019, and was subsequently terminated. *Id.* at 1, 3-4.  On October 8, 2020, the EEOC issued a right-to-sue letter to plaintiff.  *See* Am. Compl. at ¶ 9.

### B.  Procedural Background

Plaintiff commenced this action on December 9, 2020.  Compl.  Plaintiff filed an amended complaint on March 2, 2021.  Am. Compl.

On March 23, 2021, defendant filed a motion to partially dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof.  *See* Def. Mot, ECF No. 11; Def. Mem., ECF No. 11-1.  Plaintiff filed a response in opposition to defendant's motion on April 19, 2021.  *See* Pl. Resp., ECF No. 12.  Defendant filed a reply in support of its motion on May 17, 2021.  *See* Def. Reply, ECF No. 15.

Defendant's motion to partially dismiss having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty., N.C.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."  *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker,*

247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B. Title VII And The Lilly Ledbetter Fair Pay Act

Title VII prohibits employment discrimination based upon race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e. Under Title VII, a plaintiff is required to file a charge of discrimination with the EEOC before filing suit in this Court. *See id.* § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after the filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491 (citation omitted).[2]

Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)). The United States Court of Appeals for the Fourth Circuit has recognized that the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as

---

[2] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC," courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."*)*; *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

The Supreme Court has also held that "Title VII's charge-filing instruction is not jurisdictional," but, rather, this requirement is "properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019). Given this, a plaintiff's failure to exhaust her administrative remedies during the EEOC process does not affect the Court's jurisdiction over a Title VII claim. *See id.* at 1851. But, Title VII's requirement to exhaust administrative remedies is, nonetheless, a mandatory prerequisite to filing suit in this Court. *See id.* ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one . . . ."). And so, the Court will dismiss a discrimination claim brought under Title VII if the claim has not been properly raised during the EEOC process. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'") (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)); *Mile*s, 429 F.3d at 491.

Plaintiff asserts sex discrimination claims in this case. There are two methods for proving intentional discrimination upon the basis of sex under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, "an employee may utilize 'ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue.'" *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). Under this method, "a plaintiff 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Id.* (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)). And so, a plaintiff must provide "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Id.* (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)).

6

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Tuck*, 973 F.2d at 375. Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Specifically relevant to this dispute, a plaintiff may establish a prima facie case of disparate treatment on the basis of sex under Title VII by showing: (1) the plaintiff's membership in a protected class; (2) an adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment.[3] *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a prima facie case. *See Hemphill v. Aramark Corp.*, No. 12-1584, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's prima facie case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (citing *Burdine*, 450 U.S. at 253).

Plaintiff also asserts retaliation claims in this case. To prove retaliation, plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action at the hands of defendant; and (3) defendant took the adverse employment action because of the protected activity. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001) (citing

---

[3] The Fourth Circuit has held that an adverse employment action is a discriminatory act that adversely affects the "terms, conditions, or benefits" of employment. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (citation omitted). And so, typically, an adverse employment action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

*Gibson v. Old Town Trolley Tours of Wash., D.C., Inc*., 160 F.3d 177, 180 (4th Cir. 1998)).  This Court has held that a plaintiff must show "some degree of temporal proximity" between the protected activity and the adverse employment action to show a causal connection.  *Murphy-Taylor v. Hofman*, 968 F. Supp. 2d 693, 720 (D. Md. 2013) (citation omitted).  The Fourth Circuit has also held that, where a plaintiff relies on the passage of time alone to show a causal link between adverse action and protected activity, a time period of three to four months is too long to establish a causal connection.  *Pascual v. Lowe's Home Ctrs., Inc*., 193 F. App'x 229, 233 (4th Cir. 2006).  But, the Fourth Circuit has also recognized that "the employer's knowledge" of a plaintiff's protected activity, "coupled with an adverse action taken at the first opportunity[,] satisfies the causal connection element of the prima facie case."  *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).  In addition, a plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas* framework to prove a claim of retaliation.  *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

Lastly, plaintiff asserts claims under the Lilly Ledbetter Fair Pay Act in this case.  The Lilly Ledbetter Fair Pay Act of 2009 amended Title VII to address discrimination in compensation.  *See* Lilly Ledbetter Fair Pay Act of 2009, § 3(A), § 3(B), codified at 42 U.S.C. §§ 2000e-5(e)(3)(A), (B).  To state a claim for discrimination in compensation under the Lilly Ledbetter Act, plaintiff must demonstrate that she:  (1) is a member of a protected class; (2) held a job similar to jobs held by those outside the protected class; and (3) was paid less than these similarly situated employees who were outside the protected class.  *Watson v. HSU Dev., Inc*., No. 13–2071, 2015 WL 3545623, at *3 (D. Md. June 5, 2015) (quoting *Darden v. Hous. Auth. of Balt*., No. 06–216, 2006 WL 3231964, at *6 (D. Md. Nov. 7, 2006)).

### C.   The Age Discrimination In Employment Act

Plaintiff also asserts claims under the ADEA in this case.  The ADEA prohibits an employer from discharging any individual or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age.  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA, plaintiff must prove that she:  (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was

replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). In addition, to establish a prima facie case of retaliation under the ADEA, plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. *See Foster*, 787 F.3d at 250. Similar to claims brought under Title VII, a plaintiff may proceed under the *McDonnell Douglas* framework to establish a prima facie case of age discrimination or retaliation under the ADEA. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

### D.    The MFEPA And Section 2-222 Of The Prince George's County Code

Lastly, plaintiff asserts claims under the MFEPA and the Prince George's County Code in this case. The MFEPA "is the state law analogue to Title VII." *Alexander v. Marriott Int'l, Inc*., No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Section 20-606(a) of the MFEPA provides that "[a]n employer may not . . . fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's . . . sex [or] age." Md. Code State Gov't § 20-606(a). Section 20-606(f) of the MFEPA also provides that "[a]n employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has . . . opposed any practice prohibited by [Section 20-606]." *Id.* § 20-606(f).

Section 20-607 of the MFEPA prohibits discrimination in compensation and provides that:

> (a) For purposes of this subtitle, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subtitle, when: (1) a discriminatory compensation decision or other practice is adopted; (2) an individual becomes subject to a discriminatory compensation decision or other practice; or (3) an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting wholly or partly from the discriminatory compensation decision or other practice.

*Id*. § 20-607(a). In addition, Section 2-222 of the Prince George's County Code provides that "[n]o employer in [Prince George's] County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment,

9

or limit, segregate, classify, or assign employees because of discrimination."[4]  Prince George's County, Md., Code § 2–222.

## IV.   ANALYSIS

Defendant has moved to partially dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following six grounds:  (1) plaintiff has failed to exhaust her administrative remedies with regard to her discrimination claims based upon her non-selection for the telecommunicator/dispatcher position; (2) certain of plaintiff's discrimination claims are time-barred; (3) plaintiff fails to state plausible retaliation claims based upon the termination of her employment and non-selection for the telecommunicator/dispatcher position; (4) plaintiff fails to state a plausible Lilly Ledbetter Act claim; (5) plaintiff fails to state a plausible hostile work environment claim; and (6) plaintiff is not entitled to an award of punitive damages.  *See* Def. Mem. 3-13.  And so, defendant requests that the Court dismiss these claims.  *See id*. at 2.

Plaintiff counters in her response in opposition to defendant's motion that she has exhausted her administrative remedies and timely filed all of the discrimination claims in this action.  Pl. Resp. at 6-12.  Plaintiff also argues that she states plausible claims for retaliation based upon the termination of her employment and non-selection for the telecommunicator/dispatcher position, because the Town undertook these alleged retaliatory actions at the first available opportunity after she engaged in protected activity.  *Id.* at 12-14.  In addition, plaintiff contends that she alleges a plausible Lilly Ledbetter Act claim in the complaint.  *Id.* at 15-18.  And so, plaintiff requests that the Court deny defendant's partial motion to dismiss.[5]  *Id.* at 18.

For the reasons set forth below, plaintiff has not exhausted her administrative remedies with regard to her discrimination claims based upon her non-selection for the

---

[4] When a plaintiff has not asserted a distinction between federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).  The Court also applies the standards of Title VII when evaluating discrimination claims brought pursuant to the Prince George's County Code.  *See Bryan v. Prince George's Cty., Md*., No. 10–2452, 2011 WL 2650759, at *8 (D. Md. July 5, 2011), *aff'd*, 484 F. App'x. 775 (4th Cir. 2012).

[5] Plaintiff does not dispute that she may not recover punitive damages in this action and plaintiff states that she does not assert a hostile work environment claim in this case.  Pl. Resp. at 1 n.1, 2 n.2.  And so, the Court does not reach these issues.

telecommunicator/dispatcher position. Plaintiff's discrimination claims based upon her 2017 negative performance evaluation, and other events that allegedly occurred in 2017 and 2018, are also time-barred under Title VII, the ADEA, the MFEPA and the Prince George's County Code. In addition, a careful review of the amended complaint shows that plaintiff has not alleged plausible retaliation claims based upon her April 2019 termination. Plaintiff similarly fails to state a plausible Lilly Ledbetter Act claim in the amended complaint. And so, the Court **GRANTS** defendant's partial motion to dismiss.

> A. **Plaintiff Has Not Exhausted Administrative Remedies For Her Failure-To-Hire Claim**

As an initial matter, defendant persuasively argues that plaintiff has not exhausted her administrative remedies with regards to her failure-to-hire claim based upon her non-selection for the telecommunicator/dispatcher position in April 2019. Def. Mem. at 3-5. The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963. And so, where claims raised under Title VII exceed the scope of the EEOC charge, and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred for failure to exhaust the available administrative remedies through the EEOC. *See Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

In this case, it is undisputed that plaintiff's charge of discrimination does not mention her non-selection for the telecommunicator/dispatcher position. *See* Am. Compl. Ex. A; Am. Compl. at ¶¶ 45-128. Plaintiff's charge of discrimination alleges that: (1) Mr. Lestitian exhibited condescending behavior towards her; (2) plaintiff complained about Mr. Lestitian's conduct to the Town's human resources department and various supervisors in February 2017; (3) plaintiff received a negative performance evaluation in 2017; (4) plaintiff accepted a demotion to special projects associate in 2017; (5) plaintiff was replaced in her role as code enforcement community services manager by a younger male and received a salary deduction upon her replacement; and (6) plaintiff received notice of her termination on March 28, 2019, and was subsequently terminated. *See* Am. Compl. Ex. A. at 1, 3-4. And so, plaintiff's charge

11

of discrimination focuses upon her 2017 performance evaluation and demotion, and termination in 2019.  *See id.*

The Court is not persuaded by plaintiff's argument that she has exhausted administrative remedies with respect to her failure-to-hire claim, because the Town was on notice of this claim through its investigation of her charge of discrimination.  Pl. Resp. at 9.  To support this argument, plaintiff relies upon a Town "position statement," dated December 6, 2019, which briefly mentions that plaintiff was not selected for the telecommunicator/dispatcher position in 2019.  *See* Pl. Resp. Ex. 1 at 5, ECF No. 10-1; *see also* Am. Compl. at ¶ 8.  But, this position statement does not make any reference to plaintiff's asserting a failure-to-hire claim based upon her non-selection.  *See generally* Pl. Resp Ex. 1.  Nor does the position statement show that the Town investigated such a failure-to-hire claim.  *See generally id.*

Perhaps more importantly, plaintiff's failure-to-hire claim involves a separate alleged discriminatory and retaliatory act that is distinct from her performance evaluation, demotion, and subsequent termination.  Given this, the Court does not agree with plaintiff that her failure-to-hire claim would have naturally arisen from an investigation of her charge of discrimination.  *See Dennis*, 55 F.3d at 156.  And so, plaintiff has not exhausted her administrative remedies with regards to this claim.

> **B.    Plaintiff's Discrimination Claims Based Upon Events That Occurred Before November 29, 2018 Are Time Barred**

Defendant also persuasively argues that plaintiff's discrimination claims based upon events that occurred before November 29, 2018, are untimely.  Def. Mem. at 5-7.  To be timely, plaintiff must file an administrative charge with the state agency within 300 days of when an alleged discriminatory act occurs if, as is the case here, plaintiff has presented these claims to a state agency.  *See Hentosh*, 767 F.3d at 417 (citing 42 U.S.C. § 2000e-5(e)(1)); *see also White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d, 576, 579-80 (D. Md. 2007) (applying the same time requirement to the ADEA).  Because plaintiff filed her charge of discrimination with the EEOC and the Prince George's County Human Relations Commission on September 25, 2019, the alleged discriminatory acts that form the basis of her claims must not have occurred before November 29, 2018—300 days before plaintiff filed her charge of discrimination.  *See Hentosh*, 767 F.3d at 417; *White*, 528 F. Supp. 2d at 579-80; *see also* Am. Compl. Ex. A.

12

In the amended complaint, plaintiff alleges that the Town discriminated against her based upon several events that occurred in 2017 and 2018, including: (1) that she received a negative performance evaluation in March 2017; (2) that Mr. Lestitian discriminated against her in 2017 and early 2018, by, among other things, repeatedly ignoring her and treating her differently than her younger and/or male colleagues; (3) that the Town failed to investigate her complaints of discrimination in 2017 and early 2018; and (4) that she was demoted to the position of special projects associate in December 2017. *See* Am. Compl. at ¶¶ 18-22, 24, 26, 29, 31-32, 36, 38-39. Because these alleged discriminatory acts occurred before November 29, 2018, plaintiff's discrimination claims based upon these acts are time-barred and the Court must dismiss these claims.[6]

### C. Plaintiff's Retaliation Claim Based Upon Her Termination Is Not Plausible

The Court must also dismiss plaintiff's retaliation claim based upon her termination of employment in April 2019, because plaintiff fails to allege facts to show a causal connection between her alleged protected activity and this adverse employment action. To state a claim for retaliation, plaintiff must allege that there is a causal connection between her protected activity and her termination. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). And so, plaintiff must show "some degree of temporal proximity" between the protected activity and this adverse employment action. *Hofmann*, 968 F. Supp. 2d at 720 (citation omitted).

The Fourth Circuit has held that, where a plaintiff relies on the passage of time alone to prove a nexus between an adverse employment action and protected activity, the passage of three to four months between the protected activity and the adverse employment action negates a showing of a causal connection between the protected activity and the alleged retaliation. *See Pascual*, 193 F. App'x at 233. But, a showing that an employer had knowledge about the protected activity, and that the adverse employment action was undertaken at the first opportunity after the protected activity occurred, can be sufficient to establish such a causal connection. *See Price*, 380 F.3d at 213.

---

[6] The claims at issue are also time-barred under the MFEPA and the Prince George's County Code, because plaintiff did not bring this action within two years of the date on which these alleged unlawful employment actions occurred. *See* Md. Code State Gov't §§ 20-1013, 20-1202(c).

13

The Court agrees with defendant that plaintiff cannot show a causal connection between her protected activity in 2017 and early 2018 and her termination in April 2019. It is undisputed that plaintiff's termination occurred at least one year after she engaged in protected activity. Def. Mem. at 7-9; *see also* Am. Compl. at ¶¶ 60(d), 78(d), 107(d), 125(d) (relying on temporal proximity alone as proof of plaintiff's retaliation claims); *id.* at ¶¶ 21-24, 38 (alleging that plaintiff engaged in protected activity in 2017 and early 2018, when: (1) she complained about Mr. Lestitian's "gender-based" treatment to the Town's human resources department; (2) she complained to two of her supervisors about Mr. Lestitian's "gender and/or age-based treatment"; and (3) she complained about "the discriminatory treatment [that she was] experiencing" to two Town city council members). The gap of one year between plaintiff's protected activity and her termination is simply too great to show a causal connection between the protected activity and this adverse employment action. *See Pascual*, 193 F. App'x at 233.

To the extent that plaintiff could pursue her failure-to-hire claim in this action, she also does not allege a plausible retaliation claim based upon her non-selection for the telecommunicator/dispatcher position in March 2019. It is undisputed that the subject non-selection occurred in March 2019, at least one year after plaintiff engaged in protected activity. Def. Mem. at 7-9; Am. Compl. at ¶¶ 21-24, 38

Plaintiff also alleges no facts in the amended complaint to support her argument that the Town terminated her "at the first available opportunity" after she engaged in protected activity. *See generally* Am. Compl.; *see also* Pl. Resp. at 13; *Price*, 380 F.3d. at 213. In fact, the amended complaint does not contain any factual allegations to show that the Town, or, specifically, Mr. Lestitian, had a "retaliatory animus" towards plaintiff during the one-year period between plaintiff's protected activity and her non-selection, as plaintiff suggests. *See* Am. Compl. at ¶¶ 21-44; Pl. Resp. at 14. And so, the Court must also dismiss this claim.

### D.     Plaintiff Fails To State A Plausible Lilly Ledbetter Act Claim

As a final matter, plaintiff also fails to state a plausible Lilly Ledbetter Act claim in the amended complaint. To state a claim under the Lilly Ledbetter Act, plaintiff must show, among other things, that she held a job similar to jobs held by those outside the protected class and that she was paid less than these similarly situated employees who were outside the protected class. *See Watson*, 2015 WL 3545623, at *3. Plaintiff alleges in the amended complaint that a male

14

employee, Kevin Simpson, received more pay than her when he was hired for the position of the Town's office of development services director and she was demoted to the position of special projects associate. Am. Compl. at ¶¶ 31-33. Plaintiff also alleges that, after her demotion to the position of special projects associate, the Town hired male employees to serve as code enforcement officers and that she made less pay than these male employees at that time, due to her demotion. *See id.* at ¶ 33.

But, plaintiff does not allege that she was paid less than Mr. Simpson or the Town's male code enforcement officers when she held the position of code enforcement officer. *See generally id.* Nor does plaintiff allege that positions of code enforcement officer and office of development services director are similar to the job of special projects associate. *See generally id*. Rather, plaintiff only alleges that she received less pay than these male employees after her demotion. *See id*. at ¶ 33.

Given this, the factual allegations in the amended complaint, accepted as true, cannot show that plaintiff held a job that was the same or similar to the jobs held by these male employees, or that plaintiff was paid less than these male employees for performing the same or a similar job. And so, plaintiff has not asserted a viable claim under the Lilly Ledbetter Act.

V. **CONCLUSION**

In sum, plaintiff has not exhausted her administrative remedies with regards to the discrimination claims in this case based upon her non-selection for the telecommunicator/dispatcher position. Plaintiff's discrimination claims based upon her 2017 negative performance evaluation, and other events that allegedly occurred in 2017 and 2018, are also time-barred. In addition, a careful review of the amended complaint also shows that plaintiff fails to allege a plausible claim of retaliation based upon her termination and that she also fails to a allege a plausible claim under the Lilly Ledbetter Act.

And so, for the foregoing reasons, the Court:

1. **GRANTS** defendant's partial motion to dismiss; and

2. **DISMISSES:**

15

    a.  Plaintiff's claims based upon her non-selection for the telecommunicator/dispatcher position;

    b.  Plaintiff's claims based upon her 2017 negative performance evaluation and other events that occurred before November 29, 2018;

    c.  Plaintiff's retaliation claim based upon her April 2019 termination; and

    d.  Plaintiff's Lilly Ledbetter Act claim.

Defendant shall answer, or otherwise respond to, the remaining claims in the amended complaint **on or before December 31, 2021**.

**IT IS SO ORDERED**.

                                                s/ Lydia Kay Griggsby
                                                LYDIA KAY GRIGGSBY
                                                United States District Judge